ACCEPTED
12-14-00288-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
5/11/2015 8:32:04 PM
CATHY LUSK
CLERK

## No. 12-14-00288-CV

---

### In the Twelfth Court of Appeals
### Tyler, Texas

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

5/11/2015 8:32:04 PM

CATHY S. LUSK
Clerk

---

**J. MARK SWINNEA**
*Appellant*

**v.**

**ERI CONSULTING ENGINEERS, INC.
AND LARRY SNODGRASS**
*Appellees*

---

*Appealed from the 114th Judicial District Court*
*Smith County, Texas*

---

### APPELLANT'S BRIEF

---

| | |
|---|---|
| Michael E. Gazette | Greg Smith |
| Texas Bar No. 07784500 | Texas Bar No. 18600600 |
| Law Office of Michael E. Gazette | Nolan Smith |
| 100 E. Ferguson, Suite 1000 | Texas Bar No. 24075632 |
| Tyler, Texas 75702 | RAMEY & FLOCK, P.C. |
| Telephone: 903-596-9911 | 100 E. Ferguson, Suite 500 |
| Facsimile: 903-596-9922 | Tyler, Texas 75702 |
| megazette@suddenlink.com | Telephone: 903-597-3301 |
| | Facsimile: 903-597-2413 |
| | gsmith@rameyflock.com |
| | nolans@rameyflock.com |

**ATTORNEYS FOR APPELLANT**

# The Parties and Their Counsel

**I. Appellant:**

J. Mark Swinnea


**II. Appellees:**

ERI Consulting Engineers, Inc.
Larry Snodgrass


**III. Counsel for Appellant:**

Gregory D. Smith
Nolan Smith
RAMEY & FLOCK, P.C.
100 E. Ferguson, Suite 500
Tyler, TX 75702
Telephone: (903) 597-3301
Facsimile:  (903) 597-2413
gregs@rameyflock.com
nolans@rameyflock.com

Michael E. Gazette
Law Office of Michael E. Gazette
100 E. Ferguson, Suite 1000
Tyler, TX 75702
Telephone: (903) 596-9911
Facsimile:  (903) *596-9922*
megazette@suddenlink.com

**IV. Counsel for Appellees:**

Deborah Race
Ireland, Carroll & Kelley, P.C.
6101 S. Broadway, Suite 500
Tyler, TX  75703
Telephone: (903) 561-1600
Facsimile:   (903) 581-1071
**drace@icklaw.com**

Mike A. Hatchell
Locke Lord, LLP
100 Congress Avenue, Suite 300
Austin, TX  78701
Telephone: (512) 305-4752
Facsimile:   (512) 305-4800
**mahatchell@lockelord.com**

Roger W. Anderson
Gillen & Anderson
613 Shelley Park Plaza
Tyler, TX  75701
Telephone: (903) 581-8600
Facsimile:   (903) 581-8790
**randerson@gillenanderson.com**

 /s/ Gregory D. Smith
GREGORY D. SMITH

ii

# CONTENTS

Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

The Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.     Snodgrass should take nothing. . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.     Because Snodgrass has proved no individually
              recoverable actual damages, he cannot recover. . . . . . . . . 8

        B.     The Court should have addressed Swinnea's attacks
              on Snodgrass's standing to recover ERI's lost profits
              and punitive damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    II.    The Court should eliminate or revise the trial court's
        disgorgement award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        A.     If punitive disgorgement is to be allowed in this case, it
              is subject to all recognized limitations on the recovery
              and amount of punitive damages. . . . . . . . . . . . . . . . . . . 11

            1.     Disgorgement that ventures beyond restoring a
                  windfall is a species of punitive damages. . . . . . . 11

            2.     The plaintiffs have been awarded a punitive
                  disgorgement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

         a.      Being punitive and not restitutionary, the disgorgement is subject to all restrictions upon the recovery and amount of punitive damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.      Because no actual damages have been recovered in connection with the buy-out transaction, there is no legal basis for even a punitive disgorgement. . . . . . . . . . 15

    C.      Because the law will not support two punitive-damage awards for the same conduct, one or the other of the $1 million punitive damages or the $720,000 punitive disgorgement must go.. . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.   Because the $1 million punitive-damage award and the punitive disgorgement award have been entered without the required due-process analysis, the Court should, at a minimum, remand both awards for a proper excessiveness analysis. . . . . . . . . . . . . . . . . . . . . 17

    A.      The reduction in actual damages requires a new analysis of punitive damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.   The $1 million punitive-damage award and the punitive disgorgement award necessarily are excessive, both individually and collectively. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    A.      The disgorgement is excessive insofar as it requires Swinnea to return monies he did not come by in the buyout. . . . . . . . . . 24

    B.      Both punitive awards are excessive in relation to statutory limits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        1.      The Court should reconsider and reverse its *sua sponte* decision to invoke an inapplicable exception to the statutory cap on punitive damages. . . . . . . . . . . . . . . . . . 25

a.     When the Court invoked a cap-busting exception to affirm, it rendered an improper, *sua sponte* decision.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

b.     There has been no cap-busting offense. . . . . . . . . 27

c.     Because the criminal offense was not the subject of findings in the trial court, there is no basis for busting the statutory punitive-damage cap. . . . . . 30

d.     Because no actual damages have been awarded in connection with the cap-busting conduct, there is no predicate for an uncapped punitive-damage award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

e.     Because the disgorgement awarded is punitive, it must be aggregated with any punitive-damage recovery and the total subjected to a single statutory cap. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

C.     The awards violate the *Krause* factors and are excessive in relation to due-process limitations. . . . . . . . . . . . . . . . . . . . . . 32

V.     The plaintiffs are not entitled to attorneys fees. . . . . . . . . . . . . . . . . 36

VI.     The law of the case does not bar this Court from granting any of the relief Swinnea requests. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Conclusion and Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

Appendix

# AUTHORITIES

## CASES:

*Allstate Ins. Co. v. Kelly*, 680 S.W.2d 595 (Tex. App.-Tyler 1984, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bennett v. Reynolds*, 315 S.W.3d 867 (Tex. 2010). . . . . . . . . . . . . . . . . 33, 34

*Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785 (Tex. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Boyer v. Wilmington Materials, Inc.*, 754 A.2d 881 (Del. Ch. Ct 1999). . . . 24

*Bradleys' Elec., Inc., v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675 (Tex. 1999) (per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Briscoe v. Goodmark Corp.*, 102 S.W.3d 714 (Tex. 2003). . . . . . . . . . . 37, 38

*Bunton v. Bentley*, 153 S.W.3d 50 (Tex. 2004) (per curiam). . . . . . . . . . 17, 24

*Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999). . . . . . . . . . . . . . . . . . . . . 2, 18

*City of Houston v. Jackson*, 192 S.W.3d 764 (Tex. 2006). . . . . . . . . . . . 37, 40

*Cleaver v. Cleaver*, 140 S.W.3d 771 (Tex. App.-Tyler 2004, no pet.). . . . . . 21

*Commodity Futures Trading Comm'n v. Sidoti*, 178 F.3d 1132 (11th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Comm. Gen. Life Ins. Co. v. Bryson*, 219 S.W.2d 799 (Tex. 1949). . . . . . . . 38

*Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000). . . . . . . . . . . . . 37

*Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751 (Tex. 1984). . . . . . . . 9, 39

*Glazener v. Jansing*, No. 03-02-00796-CV, 2003 WL 22207226,*6 (Tex. App.-Austin Sept. 25, 2003, no pet.).. . . . . . . . . . . . . . . . . . . . . 28

*Haase v. Glazner*, 62 S.W.3d 795 (Tex. 2001).. . . . . . . . . . . . . . . . . . . . 27, 28

*Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 162 (Tex. App.-Dallas 2011, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . 35

*Hopwood v. State of Texas*, 236 F.3d 256 (5th Cir. 2000).. . . . . . . . . . . . . . 40

*Hudson v. Wakefield*, 711 S.W.2d 628 (Tex. 1986). . . . . . . . . . . . . . . . . . . 37

*Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex. 1963). . 11, 12

*Int'l Telecharge, Inc. v. Bomarko, Inc.*, 766 A.2d 437 (Del. 2000). . . . . . . . 16

*Khorshid, Inc. v. Christian*, 257 S.W.3d 748 (Tex. App.-Dallas 2008, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex. 1942). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Marin v. IESI TX Corp.*, 317 S.W.3d at 314 (Tex.App.-- Houston [1st Dist.] 2010, pet denied). . . . . . . . . . . . . . . . . . . . . . . . 29

*McCullough v. Scarbrough, Medlin & Assoc., Inc.*, 435 S.W.3d 871 (Tex. App.–Dallas 2014, pet. denied).. . . . . . . . . . . . . . . . . . . . . . . . 30

*Miller v. Bank of Am., N.A.*, 326 P.3d 20 (N.M. Ct. App. 2013). . . . . . . . . . 16

*Moore v. Jet Stream Invs.*, Ltd., 261 S.W.3d 412 (Tex. App.- Texarkana 2008, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Morton v. Nguyen*, 412 S.W.3d 506 (Tex. 2013). . . . . . . . . . . . . . . . . . . . . 12

*Mossler v. Nouri*, 2010 WL 2133940 at *3 (Tex. App.-Austin 2010, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35
(Tex. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Pat Baker Co. v. Wilson*, 971 S.W.2d 447 (Tex. 1998)(per curiam). . . . . . . 26

*Peden v. State*, 917 S.W.2d 941 (Tex. App.—Fort Worth 1996,
pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Preston Carter Co. v. Tatum*, 708 S.W.2d 23 (Tex. App.-Dallas 1986,
writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Redmon v. Griffith*, 202 S.W.3d 225 (Tex. App.-Tyler 2006, pet. denied). . . 8

*Safeshred, Inc. v. Martinez*, 365 S.W.3d 655 (Tex. 2012). . . . . . . . . . . . . . 16

*S.E.C. v. First City Fin. Corp., Ltd.*, 890 F.2d 1215 (D.C. Cir. 1989). . . . . . 25

*Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 239 (Tex. App.-Corpus Christi
2009, pet. granted). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*State Bar of Texas v. Evans*, 774 S.W.2d 656 (Tex. 1989)(per curiam). . . . . . 9

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 208, 123 S. Ct.
1513, 155 L.Ed.2d 585 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006). . . . . 19, 32

*Trevino v. Turcotte*, 564 S.W.2d 682 (Tex. 1978). . . . . . . . . . . . . . . . . . . . 40

*U.S. v. Project on Gov't Oversight*, 572 F. Supp.2d 73 (D.D.C. 2008). . . . . 16

*Walling v. Metcalfe*, 863 S.W.2d 56 (Tex. 1993). . . . . . . . . . . . . . . . . . . . 26

*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp.2d 1072
(C.D. Cal. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Western Reserve Life Assurance Co. of Ohio v. Graben*, 233 S.W3d
        360 (Tex. App.-Fort Worth 2007, no pet.). . . . . . . . . . . . . . . . . . . . . . 37

*Wingate v. Hajdik*, 795 S.W.2d 717 (Tex. 1990). . . . . . . . . . . . . . . . . . . . . . 8


**OTHER AUTHORITIES:**

Bill Analysis, SB 25, Acts of April 11, 1995, 74th Leg., R.S.,
        ch. 19, 1995 Tex. Gen. Laws 108 (amended 2003). . . . . . . . . . . . . . . 27

Doug Dendleman, *Measurement of Restitution*, 68 WASH. & LEE
        L. REV. 973. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

George P. Roach, *Unjust Enrichment in Texas: Is it a floor wax or a
        dessert topping*? 65 BAYLOR L. REV. 153 (Winter 2013). . . . . . . . . . 11

RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT
        § 42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT
        § 42 cmt d (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT
        § 51 cmt. e (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT
        § 51, cmt. f (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT
        § 51 cmt h. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45 cmt c. . . . . . . . . . . . 14

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45(1). . . . . . . . . . . . . . . 14

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45
  reporter's note, cmt c.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TEX. ATTY. GEN. OP. NO. MW-582 (1983).. . . . . . . . . . . . . . . . . . . . . . 28

TEX. CIV. PRAC. & REM. CODE ANN. §41.004(a). . . . . . . . . . . . . . . . . . . 9

TEX. R. APP. P. 44. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

TEX. R. APP. P. 47.1.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

TEX. R. APP. P. 49.9.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TEX. UNIFORM TRADE SECRETS ACT § 3. . . . . . . . . . . . . . . . . . . . . . . . 14

## The Case

This case litigates claims for breach of fiduciary duty and fraud between ERI Consulting Engineers, Inc., and its current sole owner, Larry Snodgrass, on the one hand, and the company's former 50% co-owner, Mark Swinnea, on the other.

After a bench trial, the Honorable Cynthia Stevens Kent, former presiding Judge of the 114th District Court, found for ERI and Snodgrass, on claims for fraud and fiduciary duty. *ERI Consulting Eng'gs, Inc. v. Swinnea*, 318 S.W.3d 867, 871 (Tex. 2010). Judge Kent rendered judgment awarding $720,000 as disgorgement of the consideration Swinnea received in the buyout of his ERI stock, together with $300,000 in lost-profit damages. 2 CR 173-74.[1] Snodgrass recovered another $1,000,000 in punitive damages. *Id.*

Swinnea appealed. In an opinion by Justice Griffith, this Court initially rendered a take-nothing judgment, on the basis that there was no evidence of any actual damage. *Swinnea v. ERI Consulting Eng'gs, Inc.*, 236 S.W.3d 825, 832 (Tex. App.-Tyler 2007). On further review, the supreme court affirmed in part and reversed in part: (1) it affirmed the holding that ERI and Snodgrass take noting on civil conspiracy claims against Swinnea's company, Brady Environmental; (2) it reversed and remanded the buyout consideration awards

---

[1] All clerk's record cites are cites to the clerk's record from the original trial.

1

for the trial court to apply the equitable disgorgement facts set out in *Burrow v. Arce*, 997 S.W.2d 229 (Tex. 1999); and, (3) finding some evidence of about $178,000 in lost profits, reversed and remanded the lost profits issue together with "any remaining issues concerning the trial court's initial award of $1 million in punitive damages . . ." *ERI Consulting Eng'gs, Inc. v. Swinnea*, 318 S.W.3d 867, 889, 882 (Tex. 2010).

Next, this Court, in a second opinion by Justice Griffith, suggested a remittitur of $121,398.95 in lost profit, which the plaintiffs accepted (reducing actual damages to $178,601.25 in lost profits). *ERI Consulting Eng'gs*, 364 S.W.3d at 422. The Court affirmed the $1 million punitive-damage award to Snodgrass---without addressing Swinnea's arguments that Snodgrass lacked the necessary actual-damage predicate and without addressing whether the award exceeded a constitutionally permissible ratio---even though the recovery now far exceeds the presumptive constitutional cap (a 4-to-1 ratio to actual damages).

On further remand, the trial court, the Honorable Christy Kennedy, has reinstated the same disgorgement that her predecessor initially awarded. She did not conduct a requested due-process review of punitive damages because she reasoned that this Court's decision foreclosed that right.

**Issues**

1. May a corporate shareholder recover lost profits individually when the recovery is solely based on harm to a corporation? May such a

2

shareholder recover punitive damages if he has no properly recovered actual damages? And may the Court now address these matters, which it failed to address in its prior opinion in the case.

2. Should the punitive-damage award and the punitive disgorgement be remanded, for an aggregate analysis of compliance with common-law, statutory, and constitutional requirements, in light of the remitted and recharacterized actual damages?

3. Is the combination of a $1 million punitive-damage award and a $720,000 punitive disgorgement statutorily or constitutionally excessive when actual damages are only $178,000 and the case does not involve death, grievous physical injury, financial ruin, or actions that endanger a large segment of the public?

4. Does a court err when it disgorges profits (such as, in this case, rental revenues) that were not obtained by wrongdoing?

5. Does concurrent recovery of both express punitive damages and punitive disgorgement violate principles forbidding double recovery of punitive damages?

6. Does it violate the one-satisfaction rule and other relevant principles to award a claimant attorney's fees if the claimant's greatest recovery is not in contract but is under a fiduciary-duty theory?

**Facts**

As the Court will recall from prior proceedings, Larry Snodgrass and Mark Swinnea owned equal interests in two business entities, ERI Consulting Engineers, Inc., and Malmeba Company, Ltd., which they operated together for ten years. 2 RR 21.[2] Snodgrass and ERI then bought Swinnea's ERI stock, in 2001. PX6; 4 RR 129. ERI paid $497,500 in cash consideration while Snodgrass gave Swinnea Snodgrass's half-interest in Malmeba, which owned the building ERI officed in. PX7.

Meanwhile, Chris Power, a key ERI employee who was restless to own his own company, was preparing to leave ERI. When Swinnea learned of Power's intentions, he persuaded Power to remain at ERI. To satisfy Power's desire for business ownership, the two men and their wives formed an abatement contractor, Air Quality Associates (AQA), which their wives owned and would operate. 2 RR 64.

While ERI was a consulting company, in the business of handling abatement project design, bidding, and oversight, AQA instead handled the complimentary tasks typical of an abatement contractor. The relationship between the two types of businesses---consulting company and abatement

---

[2] Unless preceded by an "SH", all record and exhibit cites are to the original trial record from 2005. Any citation to the status hearing that occurred in November 2013 is preceded by "SH."

contractor---was in respects similar to that of an architect and a building contractor.

Almost immediately, AQA began winning competitive bids for ERI-administered projects. Merico, a Longview abatement contractor and AQA competitor, investigated AQA's ownership, discovering Power's and Swinnea's involvement with the new company. 4 RR 136-41; 5 RR 10. (Power and Swinnea were board members and their wives were officers, with Power's wife being AQA's president. 2 RR 72, 79). Merico told Snodgrass it would sever its relationship with ERI unless he agreed to block AQA from bidding on ERI-administered projects. 5 RR 13. Pleased with the AQA relationship, Snodgrass refused. *Id.* So Merico stopped bidding ERI projects. *Id.* About the same time, the Swinneas exited AQA, selling out to Power and his wife.

AQA won many more ERI-administered abatement projects. And both companies---AQA and ERI---prospered. At ERI, corporate revenue doubled in the three years after Swinnea sold his stock. 4 RR 201. In 2004, the year before trial, ERI earned $800,000 in net profits---earning nearly twice the cash consideration paid for Swinnea's stock, in just a single year. 4 RR 114.

ERI's accountant concluded the inevitable: Swinnea's share of the business had been worth the consideration paid in the buyout. 4 RR 115. At the hearing before Judge Kennedy, on remand, Swinnea's accounting expert, Nick Burkette, agreed. SH 73. Specifically, Burkette valued Swinnea's share of the

business in a range between $613,000 and $800,000. SH 73. Further, illustrating the company's post-buyout prosperity, Burkette concluded that a year after the buyout, at the end of 2002, Swinnea's ownership share had appreciated to $979,000, and he estimated that two more years later (*i.e.,* at the end of 2003), the half interest ERI/Snodgrass had bought for $497,000 in cash consideration was worth just shy of $1.5 million. SH 73.

Meanwhile, the relationship between Swinnea and Snodgrass had deteriorated. Snodgrass ultimately fired Swinnea. (A part of the buyout called for Swinnea to remain at the company as an employee for several years.) Snodgrass and ERi then sued Swinnea, Malmeba, and Brady Environmental.

In the bench trial, Swinnea's counsel was outmatched and outmaneuvered. The result, as this Court knows, was a judgment (1) concluding that Swinnea breached his fiduciary duty, committed fraud, and conspired with Brady, and (2) awarding over a million dollars in what the court characterized as actual damages---lost profits and disgorgement of buyout consideration---as well as attorney's fees and a million-dollar punitive-damage award to Sndograss.

## Summary of the Argument

The $178,000 in lost ERI profit is the only actual damage recovered. Snodgrass, ERI's shareholder, may not recover ERI's lost profits, and thus his failure to recover proper actual damages dooms his recovery of punitive

6

damages. Swinnea briefed this matter in the initial appeal. But the Court never reached it. The Court may and should do so now.

This case also involves a $720,000 punitive disgorgement award. The award is punitive and not restitutionary because Swinnea has not reaped any windfall and thus has nothing needing to be restored. The evidence from both disdes' accountants is that the value of Swinnea's ERI stock supported the consideration given in exchange. Nonetheless, the trial court has reinstated the same punitive disgorgement award while this Court has upheld the punitive damages under a cursory analysis. No one has considered the punitive damages in light of either the reinstated disgorgement or the vast reduction in actual damages.

Worse, this Court has short-circuited the statutory cap upon punitive damages---which rightfully sets the maximum total amount of punitive disgorgement and punitive damages at $356,000---and it has done so on an unbriefed, *sua sponte*, ground for excepting this case from the statutory cap. Nor has any court analyzed the excessiveness of the combination of both punitive awards as measured against the U.S. Constitution's due-process limitations on excessive punishment. Yet the awards are clearly excessive. Both awards exceed the 4:1 ratio of punitive damages to actual damages elicited by both the United States and Texas Supreme Courts as a benchmark maximum. And the case lacks the factual underpinnings that would be required to break free of this benchmark

(death, grievous physical injury, financial ruin, or actions endangering a large segment of the public).

And, finally, the recovery of attorney's fees violate the one-satisfaction rule. Here, the plaintiffs' greatest recovery comes under a fiduciary-duty theory, which is a non-fee-bearing claim..

## Argument

### I. Snodgrass should take nothing.

#### A. Because Snodgrass has proved no individually recoverable actual damages, he cannot recover.

A corporate shareholder like Snodgrass may not recover individually for a loss sustained only by the corporation. *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). The recovery must be the corporation's, so that the damages can be available to pay the corporation's creditors. *Id.* In other words, a corporate shareholder lacks standing to recover individually for a wrong done to the corporation--even if he is injured by that wrong, *see Redmon v. Griffith*, 202 S.W.3d 225, 233 (Tex. App.-Tyler 2006, pet. denied), and even if a corporation only has one shareholder. *Mossler v. Nouri*, 2010 WL 2133940 at *3 (Tex. App.-Austin 2010, pet. denied).

Here, ERI alone owns the cause of action under which lost profits were awarded because the sole evidence of lost profits derives from harm to the corporation (ERI's loss of a customer). *See* Amended Additional Findings of

8

Fact and Conclusions of Law, Findings of Fact ¶ 6a ("recovery of lost profits, alone, from the loss of the Merico relationship as actual damages . . ."). Because Snodgrass lacks standing to recover ERI's lost profits, two things follow. First, the Court should reform the lost-profit award to eliminate Snodgrass as a recipient. And second, because Snodgrass has not recovered any proper actual damages, the court should also vacate the punitive-damage award, which has been rendered solely in Snodgrass's favor. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.004(a)(claimant seeking punitive damages must actually recover damages other than nominal damages); *Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 753-54 (Tex. 1984) ("Under Texas law, punitive damages are not recoverable as a general rule in the absence of actual damages"). It is really that simple.

**B.** **The Court should have addressed Swinnea's attacks on Snodgrass's standing to recover ERI's lost profits and punitive damages.**

The Court was required to address all issues necessary to the rendition of complete relief. *See State Bar of Texas v. Evans*, 774 S.W.2d 656, 659 n. 5 (Tex. 1989)(per curiam); *Bradleys' Elec., Inc., v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675 (Tex. 1999) (per curiam) (requiring consideration of all points affording greatest relief). Swinnea on appeal challenged Snodgrass's right to any recovery – be it actual or punitive damages – on the ground that any lost profit was solely

9

recoverable by ERI. *See* Appellant's Brief at xiii, 45-48 (Appendix C). The Court failed to address this claim-determinative argument.

## II.    The Court should eliminate or revise the trial court's disgorgement award.

Here, Swinnea received no extra or additional contractual consideration for his ERI stock as a result of any wrongdoing. As the undisputed evidence establishes, the consideration Mr. Swinnea gave up – his ERI stock – was worth as much as the consideration he received in return. And, the record is void of any metric suggesting that Swinnea's conduct increased the sales price. In such circumstances, there is no need for disgorgement, whether as restitution or as punishment. Rather, if Swinnea was to be punished, it should have been solely through the award of punitive damages. There is no reason why a proper punitive-damage recovery would not fully serve the purposes of such awards. There has been a single award of actual damages–$178,000–conferred solely as compensation for the profits ERI lost from severance of the Merico relationship. So, it is fitting that there should be a single punitive award.

The punitive disgorgement overlaps and duplicates the express punitive damages and is unnecessary.

**A. If punitive disgorgement is to be allowed in this case, it is subject to all recognized limitations on the recovery and amount of punitive damages.**

**1. Disgorgement that ventures beyond restoring a windfall is a species of punitive damage.**

Primarily, the disgorgement remedy seeks to neutralize windfalls to defendants. RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51 cmt. e (2011) ("the object of the disgorgement remedy—to eliminate the possibility of profit from conscious wrongdoing"); George P. Roach, *Unjust Enrichment in Texas: Is it a floor wax or a dessert topping*? 65 BAYLOR L. REV. 153, 248 (Winter 2013) ("disgorgement is measured by the defendant's gain and effectively seeks to restore the defendant to her original position"). A *restitutionary* disgorgement award would neutralize any windfall to Swinnea from the buyout: it would restore him as nearly as possible to the pre-buyout state. *See Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576-77 (Tex. 1963) (limiting disgorgement to only the incremental windfall – not total consideration – gained because of improper conduct). If the recovery goes deeper, leaving a defendant like Swinnea with *less* than he brought into the transaction, it is a species of punitive damage. That is, when a court orders a defendant to disgorge more than his net profits, the disgorgement award becomes a punitive damage award. RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 51 cmt h (" . . . making the defendant liable in excess of net gains, results in a punitive

11

sanction . . . "); RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT §§ 42, 51 (2011) (disgorgement liability exceeding the defendant's windfall crosses the border into punitive damages).

Here, in holding that disgorgement is available in cases involving contractual or buy-out consideration, the Texas Supreme Court did not imply that disgorgement may be used as a device purely to circumvent the traditional and constitutional limitations upon punitive-damage recoveries. To say otherwise would overturn decades of jurisprudence. *See, e.g., Int'l Bankers Life Ins. Co.*, 368 S.W.2d at 576-77.

### 2. The plaintiffs have been awarded a punitive disgorgement.

In this case, the disgorgement award is 100% a second punitive-damage award. After all,

- there is no windfall in Swinnea's favor to be disgorged in restitution;

- in promoting the award, the plaintiffs invoked punitive-damage principles;

- the award's judicial analyses have all been under the analytical framework applicable to punitive damages; and

- while restitution should generally be mutual[3], there has been no reciprocal restitution to Swinnea.

---

[3] *See, e.g., Morton v. Nguyen*, 412 S.W.3d 506, 509-10 (Tex. 2013)(discussing the "common alw requirement of mutual restitution").

As the undisputed evidence proves, the legitimate consideration Swinnea gave up – principally his ERI stock – was worth as much as what he received in return and now has been ordered to disgorge. Swinnea's conduct, however culpable the Court may perceive it to be, did not create any windfall such as occurs when a fiduciary takes a secret commission. *See, e.g.*, *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex. 1942). Undisputed evidence shows that Swinnea's shares of ERI stock were very valuable. Swinnea came by the shares honestly. And their value at the time of sale was derived honestly, accumulated through years of toil. As the undisputed proof shows, these shares were valued at or above the consideration paid to Swinnea in the buy out. Nor did Swinnea profit from his brief engagement with AQA.

Moreover, a proper restitutionary award would require ERI and Snodgrass to likewise restore the consideration received in exchange. Here, there has been no award returning reciprocal consideration.

Even if there would have been some identifiable windfall to Swinnea, the actual damages would fully offset it. This would eliminate any basis for restitutionary disgorgement.

> The restitutionary remedy serves to deprive the defendant of unjust gains, but it also has the effect of compensating the plaintiff to the extent of the award for any losses resulting from the appropriation. Similarly, an award of the plaintiff's proven losses also has the effect of reducing the defendant's unjust enrichment by the amount of the award. *An award of the greater of the two remedies thus ordinarily serves the objectives of both forms of relief and best prevents double recovery.*

13

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45 cmt c (emphasis added).

Consequently, a plaintiff is generally entitled to recover the greater of (1) his own full loss or (2) the defendant's windfall. RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45(1).[4] For this reason, when there are actual damages, the only unjust enrichment that may be recovered is that unjust enrichment "that is not taken into account in computing actual loss." TEX. UNIFORM TRADE SECRETS ACT § 3; *accord* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45 reporter's note, cmt c. A plaintiff's recovery of both her damages and the defendant's profits would be "anomalous in restitution terms, constituting a punitive sanction." RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 42 cmt d (2011).

In these circumstances, the disgorgement cannot be considered as anything but a species of punitive-damage recovery. ERI essentially conceded this. Its arguments to the trial court in support of disgorgement didn't identify any windfall and had nothing to do with neutralizing one. Instead, the pervasive theme was that Swinnea should be punished.

---

[4] *Accord* Doug Dendleman, *Measurement of Restitution*, 68 WASH. & LEE L. REV. 973, 985 (citing RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT ¶¶ 13-15, 40-43, 45-56) (Where the plaintiff is damaged and the defendant unjustly enriched, "the plaintiff may choose between compensatory damages and restitution").

### a. Being punitive and not restitutionary, the disgorgement is subject to all restrictions upon the recovery and amount of punitive damages.

Three things follow from the fact that the disgorgement here is a punitive damage. *First*, to be sustainable as a punitive-damage recovery, the conduct at issue must have been the source of an actual-damage award. *Second*, the disgorgement cannot overlap or duplicate another punitive-damage award. *And finally*, any disgorgement must be screened for excessiveness under Texas common law, statutory law, and the due-process clauses of the Texas and U.S. constitutions. Due process does not allow any such disgorgement except to the extent that the sum of disgorgement and any express punitive damages remains within a constitutionally permissible ratio in relation to the remitted and reconstituted actual damages. It cannot be any other way, or else these fundamental protections would be too easily avoided.

The disgorgement in this case violates each of these principles.

### B. Because no actual damages have been recovered in connection with the buy-out transaction, there is no legal basis for a punitive disgorgement.

While restitutionary relief, including restitutionary disgorgement, can be awarded even where there are no actual damages proved, this applies only if the award is in fact a restitutionary one. All punitive-damage awards, in contrast,

15

require a predicate recovery of actual damages, even where the punitive award is meted out in the form of a "disgorgement."

Here, the buyout did not cause any actual damage. Therefore, any punitive-damage award tied to the buyout is improper.

**C.** **Because the law will not support two punitive-damage awards for the same conduct, one or the other of the $1 million punitive damages or the $720,000 punitive disgorgement must go.**

Even if each punitive award would have otherwise been sustainable, they could not both be recovered, because the law condemns "multiple punitive damages awards for the same conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 208, 422, 123 S. Ct. 1513, 155 L.Ed.2d 585 (2003); *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 664 (Tex. 2012). A court may award one punitive-damage recovery per injury. *Allstate Ins. Co. v. Kelly*, 680 S.W.2d 595, 606 (Tex. App.-Tyler 1984, writ ref'd n.r.e.) (recovery of both exemplary damages and treble damages amounted to an improper double recovery of punishment damages). As a result, disgorgement may not be awarded, in addition to punitive damages, when to do so results in double punishment. *Int'l Telecharge, Inc. v. Bomarko, Inc.*, 766 A.2d 437, 442 (Del. 2000); *see also U.S. v. Project on Gov't Oversight*, 572 F. Supp.2d 73, 77 (D.D.C. 2008); *Miller v. Bank of Am., N.A.*, 326 P.3d 20, 32-33 (N.M. Ct. App. 2013); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp.2d 1072, 1084 (C.D. Cal. 2012).

While disgorgement can sometimes co-exist with punitive damages, in such cases the disgorgement should be strictly limited to merely neutralizing the defendant's windfall. It cannot spill into duplicative punishment for the same conduct. *Campbell*, 538 U.S. at 423. Because the disgorgement in this case is solely punitive, either it or the separate punitive-damage award must give way.

**III.  Because the $1 million punitive-damage award and the punitive disgorgement award have been entered without the required due-process analysis, the Court should, at a minimum, remand both awards for a proper excessiveness analysis.**

> **A.  The reduction in actual damages requires a new analysis of the excessiveness of punitive damages.**

The reduction in actual damages---a five-fold reduction in what the trial court perceived as actual damages when setting the punishment--requires a remand for a new and coordinated look at all exemplary-damage awards. *Bunton v. Bentley*, 153 S.W.3d 50, 53 (Tex. 2004) (per curiam). Indeed, any substantial "adjustment of compensatory damages" "requires reevaluation of the factors supporting an award of exemplary damages." *Id.* Here, the actual damages have been reduced by roughly 80 percent. The initial punitive-damage award was rendered by a trial court that fictitiously construed the $720,000 in buy-out consideration as actual damages and thought the lost profits were about twice as much as actually was proved. The trial court formerly thought it was setting a 1:1 ratio of punitive to actual damages. To award $1 million in express punitive

17

damages, let alone $1.72 in total punishment, would not have been possible in this case---which does not involve death, grievous physical injury, or anything approaching economic calamity---had the trial court known that actual damages were only $178,000.

Being a species of punitive damage, the disgorgement in this case must be considered in connection with all other punitive damages when it comes to evaluating the awards against the applicable statutory and constitutional limits. Were the law to require anything less, the constraints on excessive punishment could be circumvented merely by dividing an excessive punishment into two smaller awards – one expressly termed punitive damages and another called forfeiture or disgorgement.

Not only must each punitive award withstand isolated scrutiny, but the total of all such awards must satisfy all common-law, statutory, and constitutional due-process requirements. Anything less would be illogical. Because the disgorgement award is punitive and not restitution, it (together with any award of express punitive damages to Snodgrass) must be analyzed by the trial court as an initial matter and by this Court for constitutional excessiveness and compliance with the *Krause* factors. The trial court has not done so. Application of the *Burrow* factors, which have been applied to the disgorgement award in isolation, does not avoid analysis under the *Krause* factors or the statutory and constitutional requirements.

Despite clear Supreme-Court precedent requiring a due-process analysis, *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 307 (Tex. 2006), no court has lifted a finger to consider whether the combined $1.72 million in punitive awards might be constitutionally excessive. They presumptively are because they far exceed the 4:1 ratio that is the presumptive dividing line between permissible and constitutionally-invalid punishment.

Rather than consider the limits due process places upon a defendant's punishment, once the supreme court had reversed in part on other grounds, Justice Griffith's opinion perfunctorily invoked *Alamo National Bank v. Krause* with no real attempt at analysis, solely in connection with the express punitive award to Snodgrass. When he did so, Justice Griffith

- failed to attempt any constitutional due-process analysis,

- invoked an impermissible, *sua sponte* ground to avoid the statutory cap, and

- denied Swinnea any chance to brief any of these matters.

Justice Griffith's discussion failed to acknowledge the effect of the lost-profits remittitur, the supreme court's reconstitution of the disgorgement as other than actual damages, or even the fact that the latter award had been vacated and remained to be reassessed on remand. Worse, the Court's decision has precluded the trial court from conducting any punitive-damage analysis in light of the

19

revised actual damages and the remanded disgorgement. That, of course, put the cart far in front of the horse, as even the plaintiffs acknowledged when they told the supreme court a due-process analysis of the award to Snodgrass occurring in isolation, before the punitive disgorgement could be assessed, would as a matter of law be "premature." *See* Response to Petition for Review at 3-7 (attached as Appendix D).

To convince the supreme court to deny Swinnea's petition for review---which sought a due-process excessiveness analysis---ERI and Snodgrass argued that such analysis should be reserved to the trial court on remand, to be performed in conjunction with the disgorgement-factor analysis. *See* Response to Petition for Review at 3-4 ("... *the trial court will no doubt follow this Court's instruction that a change in the underlying damage awards requires a new due process review*")(attached as Appendix D). The trial court, however, didn't perform any excessiveness analysis---in part because it didn't interpret this Court's decision as allowing it to do so and in part because the plaintiffs reversed field. Despite their estoppel/admission, ERI and Snodgrass subsequently avoided a constitutional analysis of punitive damages, incorrectly telling the District Court that it need not engage the necessary excessiveness review because "[t]he Supreme Court and the Court of Appeals have disposed of the issues with regard to the lost profits and punitive damages." *See* 1 RR 4

(November 12, 2013 Hrg). Their prior position in the appellate courts renders the latter position void.

By persuading the supreme court into denying review through an argument that the trial court would perform a due-process review, ERI and Snodgrass are estopped from arguing against the propriety of such a review now. *See Cleaver v. Cleaver*, 140 S.W.3d 771, 775 (Tex. App.-Tyler 2004, no pet.) ("judicial estoppel requires only that a party take an affirmative position that is successfully maintained in the earlier proceeding, and that is contrary to the position it now seeks to invoke").

The trial court did not set out to order punitive damages at a 5:1 ratio. Instead, it is highly likely that the trial court, knowing what everyone now knows about the modest level of actual damages---would today reshape the punitive-damage award more in keeping with established norms, if given a chance. This Court's prior decision--affirming punitive damages notwithstanding the remittitur of lost profits and the recasting of the disgorgement award to reveal its punitive nature--has denied the trial court the chance to synchronize the punishment, if any, with the true harm.

When actual damages have been reduced to only about 15% of their former amount, it should suggest taking a fresh look at the amount of punitive damages, unencumbered by the initial punitive award---an award that was

molded by and bears the mark of the trial court's initial, judicially-repudiated assessment of actual damages.

A trial court that initially saw fit to punish Swinnea at what the court mistakenly thought was a 1:1 ratio would likely reformulate its view of the proper punishment in light of the reformulated actual damages. Most reasonable jurists in this circumstance would adopt the position famously attributed to John Maynard Keynes. When accused of a flip flop on economic policy, he is said to have replied: "When the facts change, I change my mind. What do you do, sir?"

Here, the *sine qua non* in assessing the amount of punitive damages---actual damages---has changed dramatically. That the trial court initially saw a 1:1 ratio of punitive to actual damages as appropriate, today implies a total punishment in the range of $180,000. Judge Kennedy, the new trial judge, presumably also would conform the punitive damages to fit the true level of actual damages. So, the law, equity, and basic principles of fairness all say the trial court should be afforded the opportunity to evaluate punitive damages anew, armed with accurate knowledge of (1) the true actual damages, (2) the disgorgement award's status as a punitive-damage award, and (3) the necessity to measure propriety of the combination of all punitive awards (disgorgement and express punitive damages) against the applicable legal, statutory, and constitutional yardsticks.

The punitive-damage award that this Court has affirmed is erroneous because it arises from an erroneous trial-court analysis. The trial court's

22

disgorgement analysis is of course erroneous because, among other things, it does not consider the disgorgement in context of the total punitive damages, including the award to Snodgrass, and does not acknowledge that the disgorgement would be subject to the traditional protections against excessive punitive damages.

This assuredly caused the rendition of an improper judgment, and is thus reversible. TEX. R. APP. P. 44. It cannot be cured or papered over by appellate review purporting to pronounce the punitive-damage amount to be within a range that is statutorily and constitutionally permissible under the correct facts. The punitive awards must be vacated and remanded because they rest on an improper analysis, in circumstances that don't allow the Court to find the error harmless. It is simply not possible to say with any assurance that the trial court would again issue a million dollar punishment on top *of a $720,000 punitive disgorgement* (for a total of $1.72 million in punishment) now, in this $178,000 damage case, simply because its predecessor issued a million dollars in *total* punishment when actual damages were purported to be $1,020,000.

When the actual damages were reduced fivefold, it triggered the requirement for a constitutional due-process review. *Bunton*, 153 S.W.3d at 53. Ever since, Swinnea has sought such a review. And when it seemed in their interest to do so, even the plaintiffs agreed such a review was required in the trial court. Respectfully, the Court should have afforded Swinnea the prior

opportunity to brief the constitutionality of punitive damages in light of the major appellate reduction in underlying actual damages. *Id.* Now, a remand to afford the trial court the chance to reevaluate the combined punitive awards is required, and would be required even had the current punitive-damage amount been constitutionally sustainable. *Id.*; *See Moore v. Jet Stream Invs.*, Ltd., 261 S.W.3d 412, 432 (Tex. App.-Texarkana 2008, pet. denied) (remanding to the trial court to reconsider attorney's fee award in light of modified damage award).

Because this complaint did not exist before appeal but arises from this Court's judgment, and because ERI shooed off supreme-court review with its promise of a forthcoming, actual due-process review of the punitive damages, this complaint is fair game for this appeal. *Bunton*, 153 S.W.3d at 53; TEX. R. APP. P. 49.9.

The punitive awards must be vacated and remanded for a proper analysis.

## IV. The $1 million punitive-damage award and the punitive disgorgement award necessarily are excessive, both individually and collectively.

### A. The disgorgement award is excessive insofar as it requires Swinnea to return monies he did not come by in the buyout.

A court may not disgorge profits that were not obtained as a result of wrongdoing. *Boyer v. Wilmington Materials, Inc.*, 754 A.2d 881, 907 (Del. Ch. Ct 1999); *Commodity Futures Trading Comm'n v. Sidoti*, 178 F.3d 1132, 1137-38 (11th Cir. 1999). The courts must therefore distinguish between those profits that are

24

obtained through wrongdoing (and thus are disgorgeable) from those that are not. *S.E.C. v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989); *see also* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 51, cmt. f (2011). The recovery in this case does not do so. Rather, it confiscates 100% of the rentals ERI paid Swinnea to lease office space, even though half of this sum is *rentals earned on the 50% interest Swinnea acquired in the leased premises years before the events at issue.* The latter amount, totaling $66,500, is not disgorgeable under any circumstance.

### B. Both punitive awards are excessive in relation to statutory limits.

#### 1. The Court should reconsider and reverse its *sua sponte* decision to invoke an inapplicable exception to the statutory cap on punitive damages.

Today, Swinnea labors under $1.72 million burden of punitive awards---$1 million in punitive damages to Snodgrass and $720,000 in punitive disgorgement. Per Section 41.008 of the Civil Practice and Remedies Code, these awards cannot legally exceed about $356,000 (two times economic damages) in combination.

### a. When the Court invoked a cap-busting exception to affirm, it rendered an improper, *sua sponte* decision.

Notwithstanding the facially applicable statutory punitive-damage cap, this Court affirmed the entire $1 million in express punitive damages based on a determination that the cap could be disregarded because the trial court supposedly found "the type of conduct described in" one of the section 41.008(c) cap-busting exceptions (the subsection 41.008(c)(11) exception for the felony offense of securing execution of a document by deception). *Swinnea,* 364 S.W.3d at 424. This was wrong. It not only afforded Swinnea no chance to brief the issue of the statutory cap (or the issue of excessiveness in light of the reduction in actual damages and reconstitution of disgorgement) but it violated an important prohibition on *sua sponte* rulings.

Respectfully, the issue of the cap-busting statute was never the Court's to decide. A court of appeals may not render a decision *sua sponte* upon an issue that no party has raised or briefed. *Pat Baker Co. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998)(per curiam); *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). This is axiomatic. Here, no one raised an issue of any cap-busting exception. So the issue was not on the Court's table.

At a minimum, if the Court intended to address the exception's potential application, it should have afforded Swinnea notice and a prior opportunity to brief the issue (including its preservation). Now, the Court should vacate its

26

pronouncements about the exception and should instead render judgment that the statute does not apply to the conduct at issue or, alternatively, does not apply to the punitive damages awarded here because they necessarily relate to conduct that does not support any cap-busting exception.

### b. There has been no cap-busting offense.

This Court has applied the statutory exception for securing documents by deception far too broadly. The legislature painstakingly has limited the availability and magnitude of punitive damages, not once, but three times. Bill Analysis, SB 25 (April 5, 1995); *see* Acts of April 11, 1995, 74th Leg., R.S., ch.19, 1995, 74th Leg., R.S., ch. 19, 1995 Tex. Gen. Laws 108, 108-113 (amended 2003). At any of these times, the legislature could have declared fraudulent inducement exempt from the statutory cap, but it did not do so. Instead, it enacted Section 41.008(c), identifying specifically-enumerated criminal offenses. Section 41.008(c) is a narrow provision, as evidenced by the infrequency in which courts have applied it. Conversely, the punitive-damage cap is far-reaching. This court's decision not only contradicts the proper statutory intent but invites others to attempt similar end runs at the statutory cap, through other tort causes of action.

Fraudulent inducement and securing a document by deception are different, albeit they implicate potentially overlapping conduct. Fraudulent inducement is a particular species of fraud arising in the context of a contract

27

and requires the existence of a contract as part of its proof. *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001). Securing execution of documents by deception focuses more sharply on situations where the gist of the culpable activity is an undertaking to obtain execution of a document by deceptive means–typically a check or authorization for government benefits. *See, e.g.,* TEX. ATTY. GEN. OP. NO. MW-582 (1983) (fraudulently obtaining food stamps). Here the buyout transaction is papered by documents, but they are not the focus of the fraudulent-inducement claim.

If Swinnea's conduct constitutes securing execution of documents by deception, then every time a seller omits to disclose a material fact in connection with a transaction that happens to be memorialized by a document, it would abrogate the statutory cap on punitive damages in such widely-litigated matters as statutory fraud in a real-estate transaction. But that is not what prior courts have concluded. *E.g., Glazener v. Jansing*, No. 03-02-00796-CV, 2003 WL 22207226, *6 (Tex. App.-Austin Sept. 25, 2003, no pet.) (cap applied to statutory fraud claim).

Swinnea started a business that competed with an ERI customer and for a while kept that fact from Snodgrass. That may perhaps breach a fiduciary duty. But, it is a far cry from conduct that criminal offenses takes aim at–hoodwinking a victim into signing a check, deed, or the like. The documents in this case were freely negotiated, reviewed, and signed in an ordinary closing, after consultation

28

with counsel. They are incidental to the current issues. The gist of the acts and the gist of the plaintiffs' claims does not focus on the securing of documents. This distinction cannot be stressed enough.

If the conduct alleged here---garden-variety fraudulent inducement---sustains a cap-busting exception, then fraudulent inducement will never be subject to the legislative caps on punitive damages. That surely cannot be the law.

This court's decision raises concerns regarding fair notice. It is not at all apparent that civil or tort allegations of secretly forming a new vendor/contractor would, if proved, make Swinnea guilty of a felony, let alone strip away the statutory cap protecting him against punitive damages exceeding two times Snodgrass's individually recoverable economic damages. To afford fair notice and procedural due process, a claimant wishing to avoid the statutory cap should be required to reveal that intention in a pleading that identifies an alleged cap-busting criminal offense. *Marin v. IESI TX Corp.*, 317 S.W.3d 314 (Tex.App.—Houston [1st Dist.] 2010, pet. denied) (holding it enough to plead facts that in retrospect could be said to constitute the criminal elements).

**c.     Because the criminal offense was not the subject of findings in the trial court, there is no basis for busting the statutory punitive-damage cap.**

To bust the statutory cap on exemplary damages, Snodgrass needed to secure trial court findings that Swinnea committed the criminal offense—that he secured execution of a document by deception. *See McCullough v. Scarbrough, Medlin & Associates, Inc.*, 435 S.W.3d 871, 912 (Tex. App.-Dallas 2014, pet. denied). It should not be enough that the trial court issued broad findings that this Court then *sua sponte* and *ex-post-facto* pronounced as supporting the offense. In *McCullough*, in contrast, the Charge actually submitted the offense to the jury (theft in that case). Here, however, ERI and Snodgrass failed to request, propose, or secure any finding that Swinnea committed the elements of the criminal offense.

**d.     Because no actual damages have been awarded in connection with the cap-busting conduct, there is no predicate for an uncapped punitive-damage recovery.**

The mere existence of one liability theory that is similar to a cap-busting offense does not lift the statutory cap for other conduct potentially supporting punitive damages, contrary to the Court's implicit presumption. If a cap-busting exception is to be applied, it should govern only insofar as the punitive damages actually punish the alleged cap-busting conduct (here, fraudulent inducement of the buyout, that is, the loss to ERI/Snodgrass from having been induced into

30

the buyout). *There has been no recovery of any actual damage for such conduct.* Rather, the lost-profits award arises solely from the formation of the abatement contracting company AQA, which caused ERI's loss of the Merico business relationship.

Further, a plaintiff asserting a punitive-damage-cap-busting offense should secure findings on the amount of damages attributable to the alleged cap-busting conduct. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 239, 252 (Tex. App.-Corpus Christi 2009, pet. granted) (evidence of cap-busting offense could not be used to avoid statutory cap unless that conduct caused plaintiff's actual damage), *rev'd on other grounds*, 348 S.W.3d 221 (2011). Snodgrass failed to do so.

Given that the only actual damages were sustained in connection with theories other than fraudulent inducement, it makes sense that most, if not all, punitive damages were likewise aimed at redressing other conduct. If the record does not conclusively establish the applicability of the statutory cap on punitive damages, the Court should consider remand to the trial court, to reassess punitive damages and identify which, if any, punitive damages have been awarded in connection with the buyout (for which there are no supporting actual damages) and which have been awarded for Swinnea's AQA involvement (which is, as a matter of law, subject to the statutory cap).

**e.** **Because the disgorgement awarded is punitive, it must be aggregated with any punitive-damage recovery and the total subjected to a single statutory cap.**

As already stated, the law obviously requires that all punitive awards pass the same statutory and constitutional muster. This means that if the punitive damages in favor of Snodgrass survive, the award must be aggregated with the punitive disgorgement award and the combined total must be subjected to a single statutory cap. That is, the total of these combined awards cannot exceed two times actual damages or approximately $356,000.

**C.** **The awards violate the *Krause* factors and are excessive in relation to due-process limitations.**

**Due Process.** Exemplary damages are subject to an ultimate federal constitutional check for exorbitance. *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 307. Even if an assessment of exemplary damages is not deemed excessive under governing state law, it may violate a party's substantive due process right to protection from "grossly excessive" exemplary damage awards. *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 767 (Tex. App.-Dallas 2008, no pet.).

The United States Supreme Court has concluded that four times the amount of compensatory damages is close to the line of constitutional impropriety for exemplary damages. *Tony Gullo*, 212 S.W.3d at 308. Here, both punitive damage awards ($1 million punitive damage award and punitive

disgorgement award) exceed the 4:1 ratio ($1 million to $178,000 equals 6 to 1 ratio; $720,000 to $178,000 equals 4.04 to 1). To push punitive damages past the 4:1 ratio would "seem[] a [constitutional] stretch" that (1) would "leave[] no room for greater punishment in cases involving death, grievous physical injury, financial ruin, or actions than endanger a large segment of the public" and (2) could not "be squared with [the Texas Supreme Court's] on-point *Tony Gullo Motors I, L.P. v. Chapa* decision, another 'scheme of deception' case" in which the Texas Supreme Court held that a ratio of 4.33 to 1 exceeded constitutional limits. *Tony Gullo*, 212 S.W.3d at 308.

While it is true that a rigid ratio of 4:1 is not universally required, the U.S. Supreme Court has stated that "ratios greater than those we have previously upheld may comport with due process where 'a particularly egregious act has resulted in a small amount of economic damages.'" *Bennett v. Reynolds*, 315 S.W.3d 867, 879 (Tex. 2010)(quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*). This exception, however, does not apply here because $178,000 is not a small amount of economic damages. *See Bennett*, 315 S.W.3d at 879 (approximately $6,000 award was not small amount of exemplary damages for purposes of exception).

Here, the harm is purely economic, does not approach the level of the punitive award, and was mostly, if not completely, offset by profit obtained through the AQA relationship. Properly understood, the case reflects only injury

33

to the corporation, ERI, a party to which the trial court found no need of awarding any express punitive damages at all. If it would have been possible to uphold a punitive-damage award to Snodgrass, who has not personally sustained a recoverable loss, it would nonetheless be impermissible to sustain any such award in the amount of $1 million under the mere guise of the freewheeling "reprehensibility exception." Yet that is precisely what Justice Griffith's analysis on the Court's behalf does. In the process, it "subvert[s] the constraining power of the ratio guidepost." *Bennett*, 315 S.W.3d at 879.

This Court's *Kraus* analysis in its 2012 opinion reached the wrong result. Here, the harm was economic rather than physical. It was limited to dishonesty and deceit occurring in a business relationship. And, despite the trial court's contrary findings, there is no evidence of any specific desire to harm the plaintiff. Just the opposite. Swinnea, in forming AQA, sought a prosperous, mutually beneficial relationship between the two companies, AQA and ERI.

Swinnea's ERI stock was always worth what was paid for it. Chris Power had independent plans to leave ERI, but AQA's formation prevented his departure. Only one ERI customer relationship, with Merico, was affected. AQA's formation created an altogether new customer for ERI, to take Merico's place. ERI had a choice to pick the relationship with AQA or a continued relationship with Merico. Merico worked only in the declining industry of asbestos remediation, while AQA's interests and prospects were broader. Power

34

continued to work for ERI and with AQA. The relationship between ERI and AQA was consensual, mutually beneficial, and grew rapidly. By all accounts, both companies prospered. ERI's profits grew immensely after the buyout, with the increase in profit being many times larger than the Merico lost profit. And the Merico lost profit is fully compensated by the actual-damage recovery.

At bottom, Swinnea is being punished for helping form AQA when it appears ERI is pleased to maintain a business relationship with AQA. As between the parties, Swinnea is the only one who has not profited from AQA's existence.

These are simply not the sort of conditions that support enormous punitive damages in the range of ten times actual damages. *See e.g.*, *Hernandez v. Sovereign Cherokee Nation Tejas*, 343 S.W.3d 1162, 177-78 (Tex. App.-Dallas 2011, pet. denied); *see also Preston Carter Co. v. Tatum*, 708 S.W.2d 23, 25 (Tex. App.-Dallas 1986, writ ref'd n.r.e.). In such circumstances, "the punishment assessed against [the defendant] should not be calamitous or ruinous." *Preston Carter Co.*, 708 S.W.2d at 25. *Preston Carter Co.* is instructive. There, an award of exemplary damages of $300,000 was excessive when (i) the appellate court had reduced compensatory damages from $165,000 to $40,000 (creating a ratio of punitive damages to actual damages of roughly 7 ½ : 1); (ii) the conduct did not spring from ill will or any specific desire to do harm to the plaintiff, (iii) the transaction

was purely a business affair, and (iv) the loss was purely financial. *Preston Carter Co.*, 708 S.W.2d at 25.

Importantly, Justice Griffith's analysis ignored *the necessity to reserve room for punishment of the most egregious violations* – which, unlike this case, involve serious personal injury, economic calamity, or actual and grievous harm to great numbers of people. Here, the sole harm not only is economic, but it doubtless has been offset (likely many times over) by profit ERI has obtained through the wildly successful AQA relationship, which ERI has embraced and continues to nurture and profit from, handsomely. ERI's willing, longstanding acceptance of AQA and their prosperous long-term relationship together cannot be over-emphasized in any excessiveness analysis of punitive damages.

Judge Kent, when she assessed punitive damages, must have thought she was acting well within the mainstream, assessing punitive damages at a 1:1 ratio (right at the mean of punitive-damage awards). Now, things are vastly different. The notion of $1,020,000 in actual damages has been shattered. The punitive-damages and punitive disgorgement approach an amazing 10:1 ratio to actual damages. Punishment this big is insupportable statutorily and constitutionally.

## V. The plaintiffs are not entitled to attorney's fees.

The trial court's judgment violates the one satisfaction rule. Under this rule, a plaintiff is entitled to only one recovery, even when his injury could be

36

said to result from multiple culpable acts. *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 390 (Tex. 2000). The plaintiff may recover under his one best legal theory-- the one entitling him to the greatest relief. *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.,* 747 S.W.2d 785, 787 (Tex. 1988). Here, the plaintiffs' greatest recovery is under a fiduciary-duty claim. Breach of fiduciary duty is not a fee-bearing claim. *See W. Reserve Life Assurance Co. of Ohio v. Graben,* 233 S.W3d 360, 377-78 (Tex. App.- Fort Worth 2007, no pet.).

## VI. The law of the case does not bar this Court from granting any of the relief Swinnea requests.

> A conclusion reached by an intermediate appellate court does not bar reconsideration of the initial conclusion in a subsequent appeal, and the decision to revisit the conclusion is left to the discretion of the court under the particular circumstances of each case. *City of Houston v. Jackson,* 192 S.W.3d 764, 769 (Tex. 2006).

Under the law-of-the-case doctrine, questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent states. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex. 1986). Under a corollary of the doctrine, an intermediate court of appeals will ordinarily follow its original decision in later appeals of the same case. *Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex. 2003). The point is to "narrow[] the issues in successive stage of the litigation," so as to achieve the goal of "uniformity of decision as well as judicial economy and efficiency." *Hudson,* 711 S.W.2d at 630. And yet this is not a doctrine that requires stubborn adherence, but only a matter of general

37

practice. "A decision rendered on an issue before the appellate court does not absolutely bar reconsideration of the same issue on a second appeal. Application of the doctrine is discretionary, depending on the particular circumstances surrounding that case." *Briscoe*, 102 S.W.3d at 716-17. Because the law of the case is required by neither the Constitution nor statute, it in fact "should be disregarded when compelling circumstances require redetermination of the point of law decided on the prior appeal." *Peden v. State*, 917 S.W.2d 941, 956 (Tex. App.—Fort Worth 1996, pet. ref'd). Thus, this Court has authority to revisit rulings it made in this case on remand from the supreme court. And if on doing so the Court determines that its original decision of any issue is erroneous, the Court need not adhere to the erroneous ruling. *Id.* Indeed, the court's duty "to administer justice under the law" is a much higher duty and clearly "outweighs [any secondary, minor] duty to be consistent." *Id.* at 717, quoting *Comm. Gen. Life Ins. Co. v. Bryson*, 219 S.W.2d 799, 800 (Tex. 1949).

In *Briscoe*, the supreme court upheld the appellate court's discretion, on a second appeal, to reconsider and overturn its own prior decision. *Briscoe*, 102 S.W.3d at 717 ("Finding clear error in its first decision, [the court of appeals] had the power to overturn that first decision on the second appeal. . . . Because its first decision was clearly erroneous, the law of the case doctrine did not apply."). Thus, this Court has authority to revisit both express and implied rulings from the prior appeal--such as its express rulings (a) busting the statutory cap on

punitive-damage award and (b) affirming the $1million amount of punitive damages as well as the implied ruling denying Swinnea's attack on Snodgrass's standing to recover the actual damages necessary to upholding the punitive damages in his favor.

In this case, the Court, upon remand from the Texas Supreme Court and without entertaining further briefing, affirmed a $1 million punitive-damage award in favor of Snodgrass, a claimant who clearly recovered no actual damages of his own and just as clearly lacked the standing to claim the right to recover ERI's corporate lost profit. This has occurred even though Swinnea briefed these issues. The resulting error---the award of debilitating punitive damages by one who has no basis to recover them---is fundamental and inarguable. In Texas, "punitive damages are not recoverable as a general rule in the absence of actual damages." *Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 753-54 (Tex. 1984). And so far as we know, no American jurisdiction would sustain a punitive-damage recovery in this circumstance.

So the basis for revisiting the punitive-damage recovery is compelling. And, in fact, the matter of Snodgrass's punitive-damage recovery may not even implicate the law of the case, for two reasons: first, to the extent that it addresses a matter of Snodgrass's standing, it is non-waivable and should always be within the Court's reach. Second, it is not clear that law-of-the-case principles address issues that have not been expressly decided.

39

All indications here are that the Court on remand simply failed to address Swinnea's preserved, appellate-briefed attack on Snodgrass's grounds for individually recovering punitive damages. Swinnea was entitled to a decision on the issue. TEX. R. APP. P. 47.1 ("the court of appeals must hand down a written opinion that . . . addresses *every* issue raised and necessary to final disposition of the appeal.) The Court should decide these issues and throw Snodgrass's recoveries out.

What is more, the supreme court's denial of Swinnea's petition for review is irrelevant here. *See, e.g. Trevino v. Turcotte*, 564 S.W.2d 682, 685 (Tex. 1978) (holding that a court of appeals' conclusion was not binding under the law of the case doctrine when the petitioner's first writ of error was denied by the Supreme Court "writ refused, no reversible error"); *see also City of Houston*, 192 S.W.3d at 769 (citing and approving *Trevino*); *accord Hopwood v. State of Texas*, 236 F.3d 256, 274 (5th Cir. 2000) ("within the law of the case framework, it is not clear error for a court of appeals to tackle legal questions that the Supreme Court has declined to answer: lower courts are bound only by the Supreme Court holdings and not by the Court's election, either express or implied, to leave open particular legal questions").

## Conclusion and Prayer

Mark Swinnea is not arguing that buyout consideration can never be disgorged. But if such disgorgement is to be awarded here, it is a species of punitive damage and must be treated as such. Such awards must be subject to the principles forbidding duplicative and excessive punitive damages, including a review for compliance with constitutional due process.

The punitive damages to Snodgrass, and the duplicative, punitive disgorgement violate the common law as well as the statutory and constitutional prohibitions against excessive punitive damages.

WHEREFORE, PREMISES CONSIDERED, the Court should eliminate Snodgrass's recovery of ERI's lost profit, eliminate both plaintiffs' recovery of attorney's fees, eliminate or reduce the disgorgement, eliminate or reduce the $1 million award of punitive damages, or alternatively remand for a trial court evaluation of the aggregate of the punitive recoveries, as may be appropriate. Of course, Swinnea prays for all other relief, in whatever form, that may be proper under the grounds and arguments in this appeal.

Respectfully submitted,

   /s/ Greg Smith

Greg Smith
State Bar No. 18600600
Nolan Smith
Texas Bar No. 24075632
RAMEY & FLOCK, P.C.
100 East Ferguson, Suite 500
Tyler, TX  75702
Telephone: (903) 597-3301
Facsimile:   (903) 597-2413
gsmith@rameyflock.com
nolans@rameyflock.com

Michael E. Gazette
Law Office of Michael E. Gazette
100 East Ferguson, Suite 1000
Tyler, TX  75702
Telephone: (903) 596-9911
Facsimile:   (903) 596-9922
megazette@suddenlink.com

**COUNSEL FOR APPELLANT,
J. MARK SWINNEA**

## Certificate of Service

The undersigned certifies that a copy of the above and foregoing document was served upon counsel for Appellees in accordance with the applicable Texas Rules of Civil Procedure on this the 11th day of May, 2015, on the following:

**Via email drace@icklaw.com**
Deborah Race
Ireland, Carroll & Kelley, P.C.
6101 S. Broadway, Suite 500
Tyler, TX  75703

**Via email mahatchell@lockelord.com**
Mike A. Hatchell
Locke Lord, LLP
100 Congress Avenue, Suite 300
Austin, TX  78701

**Via email randerson@gillenanderson.com**
Roger W. Anderson
Gillen & Anderson
613 Shelley Park Plaza
Tyler, TX  75701

___/s/ Greg Smith_____
Greg Smith

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4 because it contains 8,668 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(2)(B).

2.  This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in the proportionally spaced typeface using Word Perfect X5 in 14 point Times New Roman font.

Dated: May 11, 2015.


 /s/ Gregory D. Smith
GREGORY D. SMITH

# No. 12-14-00288-CV

## In the Twelfth Court of Appeals
## Tyler, Texas

**J. MARK SWINNEA**
*Appellant*

**v.**

**ERI CONSULTING ENGINEERS, INC.
AND LARRY SNODGRASS**
*Appellees*

*Appealed from the 114th Judicial District Court
Smith County, Texas*

## APPENDICES

A.  Amended Judgment

B.  Amended Additional Findings of Fact

C.  Excerpt from Appellant's Original Brief

D.  Excerpt from Response to Petition for Review in Cause No. 12-0241

# APPENDIX A

# Amended Judgment

CAUSE NUMBER 04-2399-B

ERI CONSULTING ENGINEERS, INC.  )(  
AND LARRY SNODGRASS,  )(  
    PLAINTIFFS  )(  
      )(  

IN THE DISTRICT COURT

VS.  )(  
      )(  

114TH JUDICIAL DISTRICT

J. MARK SWINNEA AND BRADY  )(  
ENVIRONMENTAL, INC. AND  )(  
MALMEBA COMPANY, LTD.,  )(  
    DEFENDANTS  )(  

SMITH COUNTY, TEXAS

## AMENDED JUDGMENT

Within the Court's plenary power over the Judgment in this case, the Judgment of June 30, 2014 is set aside and the following final Judgment entered in its place.

On September 6, 2005, this cause came on to be heard by the Court without a jury. All parties and their attorneys were present. On October 6, 2005, the Court made its First Amended Findings of Fact and Conclusions of Law and entered Judgment in favor of Plaintiffs, Larry Snodgrass and ERI Consulting Engineers, Inc. against Defendant J. Mark Swinnea.

On May 7, 2010, following an appeal, the Texas Supreme Court delivered its Opinion directing the Court of Appeals to remand this cause to this Court for a review of its forfeiture award in light of the principles set forth by the Texas Supreme Court. Pursuant to those instructions, the Court of Appeals remanded this cause to this Court for review of its forfeiture award.

This Court reviewed the forfeiture award as instructed by the Court of Appeals. The Court took judicial notice of the file, the extensive Reporter's Record from the 2005 trial, the trial court's previous findings and the opinions from the Texas Supreme Court and the Twelfth Court of Appeals. Neither the Supreme Court nor the Twelfth Court addressed whether the trial court should reopen

evidence. Accordingly, the trial court offered both Plaintiffs and Defendant the opportunity to present any additional evidence on the issue of forfeiture. Without objection to this procedure, each party offered additional evidence at a hearing held on November 12, 2013. The trial court, after considering the evidence in the original record, the equitable factors identified by the Texas Supreme Court, the additional evidence presented on the issue of forfeiture, and arguments of counsel at the hearing held on November 12, 2013, made Additional Findings of Fact and Conclusions of Law. On June 28, 2014, the Court made Amended Additional Findings of Fact and Conclusions of Law. Based on the original record and the evidence presented at the November 12, 2013 hearing, the Court is of the opinion that Plaintiffs, ERI Consulting Engineers, Inc. and Larry G. Snodgrass, are entitled to recover of and from Defendant J. Mark Swinnea.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Plaintiffs, ERI Consulting Engineers, Inc. and Larry G. Snodgrass recover actual damages of and from Defendant J. Mark Swinnea in the amount of ONE HUNDRED SEVENTY-EIGHT THOUSAND SIX HUNDRED ONE AND 05/100 DOLLARS ($178,601.05).

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Defendant J. Mark Swinnea disgorge himself of and return to Plaintiffs ERI Consulting Engineers, Inc. and Larry G. Snodgrass the total sum of SEVEN HUNDRED TWENTY THOUSAND SEVEN HUNDRED AND NO/100 DOLLARS ($720,700.00).

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Plaintiffs ERI Consulting Engineers, Inc. and Larry G. Snodgrass recover of and from Defendant J. Mark Swinnea attorney's fees for preparation and trial of this cause of TWENTY-EIGHT THOUSAND FIVE HUNDRED THIRTY-TWO AND NO/100 DOLLARS ($28,532.00) plus litigation expenses of TWO THOUSAND ONE HUNDRED THIRTY-TWO AND 72/100 DOLLARS ($2,132.72), TEN

THOUSAND AND NO/100 DOLLARS ($10,000.00) for appeal to the Court of Appeals, SEVEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($7,500.00) to prepare a Petition for Review to the Texas Supreme Court and FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00) for the appeal to the Texas Supreme Court.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Plaintiffs ERI Consulting Engineers, Inc. and Larry G. Snodgrass are entitled to recover of and from Defendant J. Mark Swinnea, prejudgment interest on the actual damages, the amount of such interest being $88,370.82 through June 27, 2014, the day before this judgment was signed.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Plaintiffs ERI Consulting Engineers, Inc. and Larry G. Snodgrass are entitled to recover of and from Defendant, J. Mark Swinnea post-judgment interest at the rate of 5% from the date of this Judgment until paid.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Plaintiffs ERI Consulting Engineers, Inc. and Larry G. Snodgrass are entitled to recover of and from Defendant J. Mark Swinnea, all costs of Court.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Plaintiff Larry G. Snodgrass recover of and from Defendant J. Mark Swinnea exemplary damages of ONE MILLION AND NO/100 DOLLARS ($1,000,000.00).

Plaintiffs ERI Consulting Engineers, Inc. and Larry G. Snodgrass shall take nothing by way of their suit against Defendant, Brady Environmental, Inc.

Counter-Plaintiff J. Mark Swinnea shall take nothing by way of his counterclaims against Counter-Defendants ERI Consulting Engineers, Inc. and Larry G. Snodgrass.

Counter-Plaintiff, Brady Environmental, Inc. shall take nothing by way of its counterclaims against Counter-Defendants ERI Consulting Engineers, Inc. and Larry G. Snodgrass.

Third-Party Plaintiff, Malmeba Company, Ltd. shall take nothing by way of its suit against ERI Consulting Engineers, Inc. and Larry G. Snodgrass.

All writs and processes for enforcement and collection of this Judgment and costs of Court may issue as necessary.

All relief requested in this cause not expressly granted herein is denied. This Judgment finally disposes of all parties and claims.

SIGNED _____ July 15 _____, 2014

_____
CHRISTI KENNEDY, PRESIDING JUDGE

# APPENDIX B

# Amended Additional Findings of Fact



CAUSE NUMBER 04-2399-B

ERI CONSULTING ENGINEERS, INC. §
AND LARRY SNODGRASS, §
     PLAINTIFFS §
      §
VS §
      §
J. MARK SWINNEA AND BRADY §
ENVIRONMENTAL, INC. AND §
MALMEBA COMPANY, LTD., §
     DEFENDANTS §

F I L E D

JUN 30 2014

IN THE DISTRICT COURT

114TH JUDICIAL DISTRICT

SMITH COUNTY, TEXAS

## AMENDED ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above-captioned cause came on for trial before the Court without a jury on September 6, 2005. All parties and their attorneys were present. On October 6, 2005, this Court made its First Amended Findings of Fact and Conclusions of Law and entered Judgment in favor of Plaitniffs Larry Snodgrass and ERI Consulting Engineers, Inc. against Defendant J. Mark Swinnea.

On May 7, 2010, the Texas Supreme Court delivered its opinion directing the Court of Appeals to remand this case to this Court for a review of its forfeiture award in light of principles set forth by the Texas Supreme Court. Pursuant to the Supreme Court's instructions, the Court of Appeals has remanded this cause to this Court for review of its forfeiture award.

This Court took judicial notice of the file, the extensive Reporter's Record from the 2005 trial, the trial court's previous findings and the opinions from the Texas Supreme Court and the Twelfth Court of Appeals. Neither the Supreme Court nor the Twelfth Court addressed whether the trial court should reopen evidence. The trial court offered both Plaintiffs and Defendant the opportunity to present any additional evidence on the issue

of forfeiture. Without objection to this procedure, both the Plaintiffs and the Defendant offered additional evidence at a hearing on November 12, 2013. Pursuant to the instructions of the Texas Supreme Court, this Court has considered the equitable forfeiture factors set forth by that Court and based upon the evidence and unchallenged Findings of Fact, the Court made Additional Findings of Fact and Conclusions of Law on November 12, 2013. The Court, however, finds that those Additional Findings of Fact and Conclusions of Law should be amended to correct the amount of prejudgment interest and the rate at which it is to accrue.

Accordingly, the Court makes the following Amended Additional Findings of Fact and Conclusions of Law:

## Additional Findings of Fact

1.  In considering the gravity and timing of J. Mark Swinnea's conduct, the Court hereby finds that:

    a.  J. Mark Swinnea violated his fiduciary duty to ERI and Larry Snodgrass;

    b.  J. Mark Swinnea's wrongful conduct was committed intentionally with the premeditated purpose of violating the trust J. Mark Swinnea owed to Larry Snodgrass and ERI;

    c.  J. Mark Swinnea violated this trust in order to serve his own self-interest;

    d.  J. Mark Swinnea's wrongful conduct was not an isolated violation but consisted of a continuing, persistent, calculated course of conduct which began before the buyout and continued thereafter until his employment was terminated in June, 2004; and

    e.  J. Mark Swinnea's wrongful conduct consisted of a multifaceted plot

designed to cause injury to Larry Snodgrass and ERI when they were most vulnerable as a result of their extraordinary financial commitment of cash and property for the buyout.

2. In considering the level of intent or fault by J. Mark Swinnea, the Court finds that J. Mark Swinnea's wrongful conduct was committed in bad faith, intentionally, knowingly, willfully and with malice to cause injury to ERI and Mr. Snodgrass and to unfairly and unjustly gain benefits to himself at their expense.

3. In considering the benefit to the principals, Larry Snodgrass and ERI, despite Defendant Swinnea's breach of his fiduciary duty, the Court finds that:

a. ERI was a service company;

b. ERI had no hard assets of any significant value;

c. The key to ERI's value and ERI and Larry Snograss' willingness to pay valuable consideration in any buyout of J. Mark Swinnea was their ability to retain J. Mark Swinnea's full and complete participation in ERI and the strong possibility of retaining both Swinnea and Chris Powers, ERI's two biggest producers;

d. Such major sources of revenue, expertise, longstanding client relationships and goodwill were the very things which gave ERI value and for which Larry Snodgrass and ERI were willing to pay; and

e. J. Mark Swinnea obtained the up-front cash and property and then executed a scheme, taking advantage of his intimate knowledge of ERI and Snodgrass, which would jeopardize ERI and Larry Snodgrass of their major sources of revenue, expertise, longstanding client relationships and goodwill.

4. In considering the centrality of Defendant Swinnea's breach to the scope of the fiduciary relationship, the Court finds that:

   a. J. Mark Swinnea breached his fiduciary duty, including his duty of loyalty, of good faith, of candor, to avoid self-dealing and to make full disclosure;

   b. J. Mark Swinnea committed fraud in his fiduciary capacity;

   c. J. Mark Swinnea's breaches were directed at the core elements of ERI, which gave the buy-out transaction value and for which ERI and Larry Snodgrass paid.

5. In considering the threatened or actual harm to Larry Snodgrass and ERI, as a result of the multiple breaches of fiduciary duty, the Court finds that:

   a. J. Mark Swinnea wrongfully induced Larry Snodgrass and ERI to pay full value in cash and property up-front for the buyout;

   b. J. Mark Swinnea's breaches of his fiduciary duty targeted the core elements upon which the value of the transaction was based; and

   c. J. Mark Swinnea's objective was the financial destruction of ERI and Larry Snodgrass so that J. Mark Swinnea could take advantage thereof for his own benefit.

6. In considering the adequacy of other remedies, including punitive damages, the Court finds that:

   a. Recovery of the lost profits, alone, from the loss of the Merico relationship as actual damages is inadequate;

   b. J. Mark Swinnea's culpability was significant;

   c. J. Mark Swinnea's wrongful conduct was willful, malicious, knowing, and

Intentional;

d. J. Mark Swinnea's wrongful conduct was highly offensive to a public sense of justice and propriety;

e. The punitive damages awarded are not designed to compensate Mr. Snodgrass or ERI for their loss but to punish J. Mark Swinnea and deter and serve as an example to others from engaging in this type of egregious conduct;

f. The award of punitive damages, without forfeiture, is inadequate to remediate under the circumstances in this case;

g. Disgorgement of the ill-gotten profits and gains obtained by J. Mark Swinnea is designed to protect the trust relationship and remediate the breach of that trust;

h. An award of merely actual damages and punitive damages, based on the circumstances of this case, is inadequate.

7. As a result of J. Mark Swinnea's wrongful conduct, including obtaining money and property by false pretenses, false representations, fraud while acting in a fiduciary capacity and his willful, malicious and intentional breaches of his fiduciary duty, and considering such evidence in light of the factors articulated by the Texas Supreme Court, the Court finds that it is fair, equitable and just under the facts and circumstances of this case that J. Mark Swinnea disgorge himself and return to ERI Consulting Engineers, Inc. and Larry Snodgrass the sum of $437,500.00, a portion of the up-front cash paid to J. Mark Swinnea in the buy-out.

8. As a result of J. Mark Swinnea's wrongful conduct, including obtaining money and

property by false pretenses, false representations, fraud while acting in a fiduciary capacity and his willful, malicious and intentional breaches of his fiduciary duty, and considering such evidence in light of the factors articulated by the Texas Supreme Court, the Court finds that it is fair, equitable and just under the facts and circumstances of this case that J. Mark Swinnea disgorge himself and return to ERI Consulting Engineers, Inc. and Larry Snodgrass the sum of $150,000.00, constituting one-half of the value of Malmeba Company, Ltd.

9. As a result of J. Mark Swinnea's wrongful conduct, including obtaining money and property by false pretenses, false representations, fraud while acting in a fiduciary capacity and his willful, malicious and intentional breaches of his fiduciary duty, and considering such evidence in light of the factors articulated by the Texas Supreme Court, the Court finds that it is fair, equitable and just under the facts and circumstances of this case that J. Mark Swinnea disgorge himself and return to ERI Consulting Engineers, Inc. and Larry Snodgrass the sum of $133,200.00, constituting lease payments of $3,600.00 per month paid from September 1, 2001 through September 30, 2004.

10. The current prejudgment rate is 5.00%.

11. The prejudgment interest to which Plaintiffs are entitled is $88,370.82.

## CONCLUSIONS OF LAW

1. The Court of Appeals has affirmed the recovery of Plaintiffs ERI Consulting, Inc. and Larry Snodgrass of lost profits as actual damages of and from J. Mark Swinnea of $178,601.05.

2. Plaintiffs ERI Consulting, Inc. and Larry Snodgrass are entitled to recover of and from Defendant J. Mark Swinnea, and Defendant J. Mark Swinnea is required to disgorge himself of and return to ERI Consulting Engineers, Inc. and Larry Snodgrass the total sum of $720,700.00.

3. Plaintiffs ERI Consulting Engineers, Inc. and Larry Snodgrass are entitled to recover of and from Defendant J. Mark Swinnea attorney's fees for preparation of the trial of this cause of $28,532.00, plus litigation expenses of $2,132.72; $10,000.00 for the appeal to the Court of Appeals, $7500.00 for the preparation of a Petition for Review to the Texas Supreme Court and $5000.00 for the appeal to the Texas Supreme Court.

4. Plaintiffs ERI Consulting Engineers, Inc. and Larry Snodgrass are entitled to recover from Defendant J. Mark Swinnea prejudgment interest of $88,370.82 through June 27, 2014, the day before the judgment was signed.

5. Plaintiffs ERI Consulting Engineers, Inc. and Larry Snodgrass are entitled to recover from Defendant J. Mark Swinnea post-judgment interest at the rate of 5.00% per annum from the date of Judgment, June 28, 2014, until said judgment is paid.

6. Plaintiffs ERI Consulting Engineers, Inc. and Larry Snodgrass are entitled to recover from Defendant J. Mark Swinnea all costs of court.

7. The Court of Appeals has affirmed that Larry Snodgrass is entitled to recover of and from Defendant J. Mark Swinnea exemplary damages of $1,000,000.00.

8. Plaintiffs ERI Consulting Engineers, Inc. and Larry Snodgrass should take nothing by their suit of and from Brady Environmental, Inc.

9. Counter-Plaintiff J. Mark Swinnea should take nothing by his suit of and from ERI

Consulting Engineers, Inc. and Larry Snodgrass.

10. Brady Environmental, Inc. should take nothing by its suit of and from ERI Consulting Engineers, Inc. and Larry Snodgrass.

11. Malmeba Company, Ltd. should take nothing by its suit of and from ERI Consulting Engineers, Inc. and Larry Snodgrass.


SIGNED _June 28_, 2014

CHRISTI KENNEDY, PRESIDING JUDGE

# APPENDIX C

# Excerpt from Appellant's Original Brief

# The Issues

**The Evidence-less Damage Awards.** ERI and Swinnea agreed on a buyout of Swinnea's ERI stock. Shortly beforehand, Swinnea helped form another company without disclosing it. Later, an ERI customer angered at the connection between the new company and ERI personnel forced ERI to choose between it and the new company. ERI chose the new company. Based on the loss of this one customer, the district court has refunded virtually everything received in the buyout and has awarded the gross revenues the lost customer might have generated.

- If there was no evidence or factually insufficient evidence that ERI was less profitable in its new relationship than it would have been with the lost customer, did the district court err in awarding damages?

- Are the damage awards unsustainable for other reasons?

**Snodgrass's Lack of Standing.** Does Snodgrass individually have the standing to recover as damages items of consideration and/or revenues that ERI – a separate entity – paid or lost?

**The impossibility of Brady's Pre-Formation Culpability.** If Brady did not exist when the torts at issue would have occurred or when the awarded damages would have accrued, did the district court err in awarding those damages against it?

**The Unsustainability/Excessiveness of Punitive Damages.** Is there clear and convincing evidence of the necessary intent to harm? Are there any underlying awards (1) supported by proof, (2) recoverable by Snodgrass, and (3) constituting actual damage

fully 90% of AQA's business involved projects bid through ERI.[164] For Swinnea to have set out to harm ERI in this situation would have immediately jeopardized his ERI employment and AQA's very existence.

Of course, if AQA had been the competitor to ERI that the district court erroneously found, AQA likely would in that instance benefit directly and proportionally from a weakened ERI. But since the two companies filled different and complimentary niches, the truth is just the opposite.

### B. There are no recoverable actual damages available to sustain any exemplary damages.

Recovery of exemplary damages in this case is governed by Chapter 41 of the Texas Civil Practice and Remedies Code.[165] Equitable relief – including the equitable remedy of disgorgement – was insufficient to support punitive damages at common law.[166] It remains insufficient to support them under Chapter 41, which insofar as is pertinent here mandates that "exemplary damages may be awarded only if damages other than nominal damages are awarded."[167] The awards of buyout consideration are disgorgement awards and do not reflect

---

[164] 3 RR 144.

[165] TEX. CIV. PRAC. & REM. CODE ANN. §41.002 (Vernon 1997); *See Aboud v. Schlichtemeier*, 6 S.W.3d 742 (Tex. App.–Corpus Christi 1999, pet. denied).

[166] *See Dyll v. Adams*, 167 F.3d 945 (5th Cir. 1999); *accord Patton v. Nicholas*, 279 S.W.2d 848, 858 (Tex. 1955)(no exemplary damages in the absence of actual damages even though there were equitable remedies granted).

[167] TEX. CIV. PRAC. & REM. CODE ANN. §41.004(a).

45

actual damage to the plaintiffs. Thus, the question of exemplary damages in this case becomes one of whether Snodgrass proved that he individually is entitled to recover for loss of Merico income. He did not come close to that showing. The right to recover for a breach of a corporate fiduciary duty belongs solely to the corporation, not to an shareholder or officer who may have been harmed from the breach.[168] To litigate a claim, the plaintiff must have standing with respect to that claim.[169] Standing consists of an interest peculiar to the person individually and is implicit in the concept of subject matter jurisdiction.[170] As a component of subject matter jurisdiction, it cannot be waived and may be raised at any stage of the proceeding.[171] A corporate shareholder – even if the sole shareholder – lacks standing to recover damages personally for a wrong done to the corporation even though the shareholder may be injured by that wrong.[172] A shareholder – even a sole shareholder – does not own the assets of the corporation or its causes of action.[173] And a shareholder may not sue in his own name and for his own benefit on a cause of action belonging to a corporation,

---

[168]Wingate v. Hadjik, 795 S.W.2d 717, 719 (Tex. 1990).

[169]See Hunt v. Bass, 664 S.W.2d 323, 324 (Tex. 1984).

[170]See Texas Ass'n of Business v. Texas Air Control Bd., 852 S.W.2d 440, 443 (Tex. 1993).

[171]Id at 446.

[172]Wingate v. Hajdik, 795 S.W.2d 717, 719 (Tex. 1990); Myer v. Cuevas, 119 S.W.3d 830 (Tex. App.–San Antonio 2003, no pet.) (condo owner did not state a cause of action against condominium corporation where the allegations, if proven, would result in damage only to the corporate assets and only the corporation as the aggrieved part had standing to sue to recover for that damage); Yetiv v. Harris County Appraisal Dist., 1999 WL 213239 (Tex. App.–Houston [14th Dist.] 1999, no pet.)(not designated for publication)(sole shareholder had no standing to litigate claim for damage to corporation).

[173]See El T. Mexican Restaurants, Inc. v. Bacon, 921 S.W.2d 247, 251 (Tex. App.–Houston [1st Dist.] 1995, writ denied).

46

even if that shareholder is indirectly injured.[174] Indeed, even when the allegation is that the defendant's actions have made the plaintiff's shares worthless, the shareholder may have no standing to sue for the injury other than to pursue a derivative action on the corporation's behalf.[175] The cause of action must be brought by the corporation so that the damages recovered may be available for the payment of the corporation's creditors.[176] Even when a corporation is incapacitated (as when it has forfeited its charter), it alone holds legal title to its causes of action.[177] In fact, for a corporate officer like Snodgrass to sue individually seeking to recover for a corporate injury is tantamount to, if not literally, a breach of the officer's duty of loyalty to the corporation and an attempt to usurp a corporate action.[178] Thus, *Wingate* tells us, a shareholder lacks standing to sue corporate officers for actions decreasing the value of his stock.[179]

Here, ERI contracted to buy back Swinnea's shares, ERI and only ERI committed to pay the upfront cash. Similarly, it was ERI that leased the Malmeba building. ERI had the

---

[174]Id.

[175]*Leach v. Federal Deposit Ins. Corp.*, 860 F.2d 1266, 1273 (5th Cir. 1988); *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 745 (5th Cir. 1989).

[176]*See Wingate*, 795 S.W.2d at 719.

[177]*El T. Mexican Restaurants*, 921 S.W.2d at 247; *see also Searcy v. Houston Lighting & Power Co.*, 907 F.2d 562 (5th Cir. 1990)(suit properly dismissed where president and sole shareholder had no standing to assert the issues raised).

[178]*Searcy*, 907 F.2d at 565; *see also Canion v. Texas Cycle Supply, Inc.*, 537 S.W.2d 510, 513 (Tex. Civ. App.–Austin 1976, writ ref'd n.r.e.).

[179]795 S.W.2d at 719 ("[g]enerally, the individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock.").

relationship with Merico. And it was ERI that allegedly lost the Merico income. Snodgrass's interest was indirect, experienced vicariously through ERI. That indirect loss is not recoverable individually. It is fully vindicated if and when ERI alone is compensated for its direct losses. Which is just as well, because we know factually that Snodgrass sustained no individual injury: Whereas before the events at issue he was a mere 50 percent owner, he now owns this thriving business outright, enjoying the fruits of 100% ownership.

### C.   In any event, the punitive damages are wildly excessive.

Under Chapter 41, exemplary damages may not exceed an amount equal to the greater of (1) two times the amount of economic damages plus up to $750,000 in non-economic damages or (2) $200,000. Here, because the judgment does not award non-economic damages,[180] the maximum punitive damage amount is the greater of two times Snodgrass's individually recoverable actual damages or $200,000. As stated above, we are convinced that Snodgrass has no actual damages and, thus, there can be no punitive-damage recovery. But if Snodgrass has proven that he (as opposed to ERI) is entitled to recover any actual damages, the maximum punitive-damage recovery is limited to two times that amount and the punitive-damage award should be reformed accordingly.

## IV.   Malmeba is entitled to judgment for the unpaid lease payments.

A purchaser who elects not to rescind a fraudulently induced purchase but instead sues

---

[180]Section 41.001(12) defines non-economic damages as those damages intended to compensate for physical pain and suffering, mental or emotional pain, loss of consortium, disfigurement, physical impairment, loss of companionship, inconvenience, and other similar non-pecuniary losses.

# APPENDIX D

# Excerpt from Response to Petition for Review in Cause No. 12-0241

can buy this company [ERI] back 50 cents on the dollar." (*ERI 2010* at 871; 3 RR 129.) In this case, Swinnea's breach of fiduciary duty *was* his act of intentionally inducing Snodgrass to sign the buyout agreement. The record contradicts Swinnea's purported distinction.

The trial court found that Swinnea acted "knowingly" and "intentionally." Swinnea's attempt to portray his conduct as benign technical breaches of duty is also belied by the *unchallenged* findings. The trial court found that Swinnea "knowingly" and "intentionally" induced Snodgrass into the buyout agreement. (FF 33-42, 2 CR 163-64.) The Tyler Court of Appeals applied those express findings; it did not engage in "impermissible appellate fact-finding," as Swinnea contends. *Swinnea v. ERI Consulting Eng'rs, Inc.*, 364 S.W.3d 421 (Tex. App.—Tyler 2012) ("*ERI 2012*"); *see Petition for Review* at 8-9.

## SUMMARY OF THE ARGUMENT

The court of appeals' opinion does the obvious: it applies the findings of fact to uncomplicated legal principles, and remands the remaining issues to the trial court. Nothing in this unremarkable opinion merits this Court's review.

**Due Process**

Due process review of the punitive damage award was premature, because the trial court must first obey this Court's mandate to reevaluate the return-of-consideration damages. This Court has held that such damages are "actual damages" justifying an award of exemplary damages, so they must be included in the due process "ratio" calculation. After that review, the trial court will no doubt follow this Court's instruction

3

that a change in the underlying damage awards requires a new due process review. Until then, the ratio is 1.1:1—hardly a constitutional crisis requiring immediate intervention.

**Exceptions To The Statutory Cap On Punitive Damages**

The court of appeals concluded that the trial court's findings supported an exception to the statutory cap on punitive damages. That opinion contains none of the dramatic errors alleged in Swinnea's Petition. The court of appeals simply held that the trial court's express findings of fact met every element of the exemption from the cap for "securing the execution of a document by deception." For that reason, the opinion does not conflict with other court of appeals cases where a necessary jury finding was missing. The courts agree on the law, but the facts of each case are different.

Nor will the court of appeals' opinion demolish the statutory cap in all fraud cases. While the exemption for "securing the execution of a document by deception" shares some elements with fraudulent inducement, they are not identical. And when the factfinder finds all the elements of *both*—as in this case—there is no error. Swinnea tries to avoid that result by urging that this Court rewrite the Penal Code to narrow this exemption, even though the exemption has long been read to include a contract – like the buyout contract here – within the term "document." By applying the express findings to the plain language of the statute, the court of appeals did not open the floodgates. It tailored the facts to the laws adopted by the Legislature, just as justice requires.

Swinnea also claims that he had no notice or opportunity to brief the issues, but that is false. ERI and Snodgrass invoked the statutory exception in their response brief in the court of appeals, but Swinnea said nothing in reply. ERI's pleadings also gave fair

4

notice to Swinnea that this exemption could apply. The court of appeals followed the briefs and the record; it did not wander afield looking for reasons to punish Swinnea.

Finally, the record contradicts Swinnea's attempt to divide his actions into separate events that insulate him from liability for exemplary damages. The record shows that Swinnea engaged in a single scheme that caused all of the damages in the case, including both the lost profit damages and the return-of-consideration damages. Thus, there is no merit to Swinnea's claim that the cap-busting offense had no relation to the punitive damages.

The court of appeals' modest opinion generates no conflict in the courts of appeals. The only harm from the opinion is to Swinnea, who was rightly punished for his despicable scheme. This Court should deny review.

BRIEF OF THE ARGUMENT

## I. Due Process Review Is Premature Because The Trial Court Has Not Yet Reconsidered The Disgorgement Award

Swinnea urges this Court to grant review to enforce the due process limitations on exemplary damage awards, but his complaint is premature. *Petition for Review* at viii, xiii-xiv, 5-6, 12-13. At this moment, the ratio of actual to exemplary damages is 1.1:1. That may change if the trial court reduces the disgorgement damages, but, if that happens, the trial court will follow this Court's instruction to re-examine the due process factors in light of the revised damage award. Only *then* will the issue be ripe for appellate review.

5

In his Petition for Review, Swinnea urges this Court to grant review by arguing that the Tyler Court of Appeals was derelict in its duty to consider due process. *Id.* at 5. The court of appeals addressed all the exemplary damage issues that had been briefed. *ERI 2012*, 364 S.W.3d at 423-24. Due process review was premature because this Court remanded the disgorgement damages to the trial court for further consideration of the equitable forfeiture factors of *Burrow v. Arce*, 997 S.W.2d 229, 243-44 (Tex. 1999). *ERI 2010*, 318 S.W.3d at 875; *ERI 2012*, 364 S.W.3d at 425.

When calculating the ratio of actual damages to exemplary damages, the disgorgement award must be included. This Court has held that "recovery of the consideration paid as a result of fraud constitutes actual damages and will serve as a basis for the recovery of exemplary damages." *Nabours v. Longview Savings & Loan Ass'n*, 700 S.W.2d 901, 904 (Tex. 1985), *quoting Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 568 (Tex. 1963).[1] Due process review includes that award, so due process review is not ripe until the trial court reevaluates the disgorgement damages.

If the trial court substantially reduces the disgorgement award, it will then undoubtedly follow this Court's command to reevaluate the due process factors *de novo*. *Bunton v. Bentley*, 153 S.W.3d 50, 51 (Tex. 2004) (per curiam) ("adjustment of compensatory damages therefore requires reevaluation of the factors supporting an award of exemplary damages"). But no court can evaluate due process until all the facts are in.

Swinnea insists that this Court must act immediately because the punitive damage

---

[1] *Holloway* itself quoted *Briggs v. Rodriguez*, 236 S.W.2d 510, 516 (Tex. Civ. App.—San Antonio 1951, writ ref'd n.r.e.).

award exceeds actual damages by 6:1 and "flaunts [sic] ... the outer bounds of constitutional propriety." *Petition for Review* at viii, xiii-xiv. He also protests that he had no opportunity to brief his due process arguments. *Id.* at 12-13. But, Swinnea miscalculates the current ratio because he omits the disgorgement damages in violation of *Nabours. Nabours*, 700 S.W.2d at 904.[2] The ratio of actual to exemplary damages stands at 1.1:1 after the lost profit remittitur—hardly the constitutional crisis that Swinnea claims.[3] The coming *de novo* due process review alleviates Swinnea's concerns.

Until this Court's remand order takes its course, due process review is simply premature.

## II. The Court Of Appeals Did Not Err In Applying An Exception To The Statutory Cap On Exemplary Damages

The remainder of Swinnea's arguments challenge the court of appeals' conclusion that exemplary damages are not capped, because the exemption for "securing execution of a document by deception" applies. *Petition for Review* at 9-15. But each element of this exemption was found by the trial court. Swinnea's arguments amount to nothing more than a refusal to face those facts.

---

[2] Similarly, the United States Supreme Court has explained that due process examines "the ratio between harm, *or potential harm*, to the plaintiff and the punitive damages award." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 424 (2003) (emphasis added); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 581 (1996). Swinnea has nothing to say about the *potential* harm from his breach of fiduciary duty, which encompasses the disgorgement of ill-gotten gains and more.

[3] The original disgorgement award totaled $720,200, and lost profits have now been remitted to $178,601.05, making a total of $898,801.05 in actual damages compared to exemplary damages of $1,000,000. *ERI 2012*, 364 S.W.3d at 422-23 (remittitur); *ERI 2010*, 318 S.W.3d at 872 (listing damages).